GEORGE H. KENNEDY and Others, as Executors, etc., of LOUISA STAMP, Deceased, Appellants, *v.* EDWARD SMITH and Others, Respondents, Impleaded with AGNES ROBERTS and Others, Defendants.

Third Department, March 15, 1923.

Adverse possession — land in question was deeded by testatrix and first husband to third person in 1857 and redeeded to testatrix in same year — title of testatrix to entire parcel contained flaw — testatrix and first husband remained in possession until his death — testatrix continued in possession after remarriage and until her death in 1919, claiming as owner — descendants of children of first husband by prior marriage and descendants of children of testatrix and first husband claim title through father — parents of claimants reached majority on or before 1877 — testatrix had title by adverse possession — adverse possession may be acquired against heirs.

Testatrix had title to the land in question by adverse possession at the time of her death, since it appears that the land was deeded by her and her first husband to a third person in 1857 by a deed which apparently did not convey all the land, and was redeeded by said third person by similar description to

the testatrix in the same year; that the testatrix and her first husband remained in possession until his death in 1862; that she continued in possession prior to and after her remarriage and until her death in 1919; that during all the time she held possession she made improvements, paid taxes, rented the land and collected the rents and generally exercised the authority of ownership in the entire parcel; that the present claimants are the descendants of a child of the first husband by a prior marriage and descendants of the children of the testatrix and her first husband; that all of said children had reached the age of majority in or before 1877, and that at no time prior to the commencement of this action had the title of the testatrix to the entire parcel been questioned.

Title by adverse possession may be acquired as against the heirs of the prior owner.

HASBROUCK, J., dissents.

APPEAL by the plaintiffs, George H. Kennedy and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 20th day of January, 1922, upon the decision of the court rendered after a trial at the Erie Equity Term dismissing the complaint on the merits and adjudging the title to the real property therein described to be in the defendants.

This appeal was transferred from the Fourth Department to the Third Department. (See 204 App. Div. 858.)

*George H. Kennedy,* for the appellants.

*Ernest F. Kruse* and *Strebel, Corey, Tubbs & Beal* [*Carlos C. Alden* of counsel], for the respondents.

KILEY, J.:

This action was brought to quiet title, or as the trial court designates it, " Suit in equity to determine claim to real property." (117 Misc. Rep. 237.) In 1849 Michael Roberts commenced to acquire real estate in the now city of Buffalo. The search shows different conveyances to him, and some from him and his wife. It may be gathered from the descriptions available and from the briefs of counsel, that some of the lands so acquired were irregular in shape, and that some of the conveyances to and from others were for the purpose of squaring out the line of his property as nearly as could be. It further appears that he had accomplished that purpose by the year 1857, so that the lands remaining to him at that time were rectangular, or nearly so, in shape, and in one piece. Its southeast corner was at the junction of Abbott road and South Park avenue. Michael Roberts was married to Louisa Roberts and lived on the above-described lands and occupied a house and buildings situate on the eastern end or side of said lot of land facing South Park avenue. They conducted a grocery store, saloon and feed store. As near as can be determined by the records

at hand, the premises last referred to, or the greater part thereof, were acquired by Michael Roberts in 1850 and are described in the deed as follows: " Commencing at a point in the south line of said lots and the center of the Abbott Road, one chain and *81 links west from the southeast corner* of said lot 51 and running thence north 25 degrees, 15' east 10 chains; thence north 74 degrees and 3/4 west, 2 chains; thence south 25 degrees and 15', 10 chains to the center of the Abbott Road; thence south 74 degrees and 3/4 east along the center of the Abbott Road 2 chains to the place of beginning, containing 2 acres of land." As aforesaid, there were other conveyances to Roberts. On June 26, 1857, Michael Roberts and Louisa, his wife, conveyed, by the description last above given, said premises to George Fix. He also purported to convey additional land to said Fix, but as near as I can ascertain the exceptions from the conveyance, as found in the deeds, except much of the second described parcel, at least to such an extent as to leave the rectangular piece above referred to as having its southeast corner at the junction of Abbott road and South Park avenue. On the 26th day of November, 1857, said George Fix and wife gave a deed to Louisa Roberts of lands, by a description exactly the same as the one used in the conveyance to Fix except that in the first described parcel in the deed to Fix is found " one chain of 81 links west from the *southeast* corner of said lot No. 51," and in the deed from Fix and wife to Louisa Roberts it reads " one chain and 81 links west from the *southwest* corner of said lot No. 51." In the complaint the same line is given as " one chain, eighty-one links *to* the southwest corner." The question presented here does not depend wholly on a correct interpretation of the foregoing deeds, as will later appear. It should, however, be borne in mind that at the time of the transfer to Fix these deeds were supposed to cover all of the lands owned by Michael Roberts, except the property in dispute which is the rectangular piece having its southeast corner at the junction of Abbott road and South Park avenue. Michael Roberts died intestate in June, 1862. He died on these premises where he was residing with his wife, the said Louisa Roberts, a boy fourteen years old by his former marriage, and two younger girls, the issue of the marriage with said Louisa. The widow continued to carry on the business and support her family alone until March 7, 1864, when she married one John Stamp. There were children, issue of this marriage, but only descendants of children of Michael Roberts are antagonistic to the claim of the plaintiffs. The youngest of the children of Michael Roberts became twenty-one years of age in 1877. The stepson of Louisa, William Roberts, went west when a young man, married, and is the ancestor of

one branch of these defendants; the other defendants descended from the two daughters, except where husbands or wives, surviving, are made defendants. After the death of Michael Roberts until the marriage of Louisa to Stamp she carried on the business, occupied the property, and treated it as her own; after her second marriage as aforesaid, she and her husband carried on the business, extended it, and made improvements and repairs at a considerable expense; paid taxes and insurance, and openly exercised authority and control over the property. This continued until 1893 when they moved into another house, and thereafter Louisa Roberts Stamp rented the property and received the rents. During her occupancy large paving taxes were levied against the property by the city of Buffalo, which were paid by Louisa Stamp. One building was erected partly on the west half and partly on the east half of this property. She had negotiated for the sale of the property, but a sale was not made. John Stamp died in 1900, after which his widow, Louisa, attended to these matters until she died in 1919. It appears from the record that all of the children shared, more or less, in the fruits of her effort, labor and industry. The stepson, William, had been advanced by her sums at various times, to a greater amount than his father was worth in his lifetime. Louisa Stamp left a last will and testament, in and by which she disposed of an estate of about $30,000, including the property in dispute, the value of which was conceded upon the trial to be $5,000. After her death these plaintiffs rented the property, paid taxes and insurance thereon and treated it as part of her estate. There came a time when the plaintiffs had an opportunity to sell the property, the whole piece, and from the search and the plat incorporated in the same it was discovered that there was an apparent flaw in the title of the deceased to the east part of said premises. This piece of land had always been inclosed by a fence and there was no line of demarkation separating the two parts. This action was brought by the executors for the purpose of determining where the title rested. The descendants of Michael Roberts set up the defense that Michael Roberts never parted with title to the east part. In view of the condition of the descriptions and records the plaintiffs could not claim a clear record title in their testatrix, but do assert that a title, in fact, did ripen in her by adverse possession. That the conveyances constitute a basis for the claim of color of title in Louisa Roberts Stamp cannot well be questioned, and all other facts necessary to create a title by adverse possession were found in favor of the plaintiffs. The court held that the title was in the defendants. As appears from the opinion of the trial court the decision is based

upon the relation of defendants to plaintiffs' testatrix; that she held said premises as doweress and guardian in socage of the children and subordinate to their rights, but intimates that if it was not for such relationship plaintiffs had made a case for a decision in their favor. The court finds that she claimed to be the owner, but refused to find that she believed she was the owner. I cannot reconcile this latter finding with the facts appearing in the record; it imputes a fraudulent color to the acts and attitude of Louisa Roberts Stamp, which the evidence does not sustain. None of the children lived on this property after 1875, and all but William lived in the vicinity of this property during the life of their mother after 1857. Until this action was commenced none of the defendants ever claimed they had any interest in the property. Adverse possession, as a legal proposition, is adverse possession, no matter against whom it runs. The plaintiffs have proved a title by adverse possession, and the only question here is, shall we withhold its application in this case because an appeal for such holding is made to the equity side of the court? In an effort to do equity to one party we must avoid being inequitable to the other party. When the equities are cast up between these parties the balance is found in favor of the plaintiffs. The courts have held that a title by adverse possession will hold as against heirs. As above observed, no child is asserting a claim here; there cannot be any claim of the relation of guardian in socage, or otherwise, for the last forty years. For the purpose of this action, under the circumstances appearing here, the defendants should be regarded in the light of any heirs. The title in plaintiffs' testatrix should be upheld. (*Criswell* v. *Noble,* 61 Misc. Rep. 483; affd., without opinion, 134 App. Div. 994.)

Adverse possession commenced to run in favor of plaintiffs' testatrix before the heirs, defendants here, were born and continued until her death. (*Becker* v. *Van Valkenburgh,* 29 Barb. 319; *Zapf* v. *Carter,* 70 App. Div. 395.) Plaintiffs' testatrix acquired her title to whatever of these lands that were conveyed to her by a deed from George Fix and wife some six months after Michael Roberts, her husband, had deeded to Fix. The record does not show what arrangement existed between Roberts and Fix; the deed from Fix to Louisa Roberts six months later suggests that whatever that arrangement was, it was later assumed by Louisa Roberts, plaintiffs' testatrix, and it must be presumed that since that time she held the whole parcel under claim of color of title. Defendants never asserted any right to or interest in this property until the commencement of this action. The right to assert such claim existed in our laws since before the youngest child of Michael and Louisa

Roberts Stamp became of age in 1877. (*Marvin* v. *Lewis*, 61 Barb. 49.) Such right has existed under the Code of Civil Procedure since its adoption with relief because of certain disabilities. (Code Civ. Proc. § 369 *et seq.;* Id. § 375.)* In *Baker* v. *Oakwood* (123 N. Y. 28, 29) the court approves and adopts the holding in *Campbell* v. *Holt* (115 U. S. 620) where that court says: " By the long and undisturbed possession of tangible property, real or personal, one may acquire a title to it, or ownership, superior in law to that of another, who may be able to prove an antecedent and, at one time, paramount title. This superior or antecedent title has been lost by the *laches* of the person holding it, in failing within a reasonable time to assert it effectively; as, by resuming the possession to which he was entitled, or asserting his right by suit in the proper court."

The judgment should be reversed, with costs. All findings of fact and conclusions of law holding or tending to hold that the title to the lands and premises in question is in the defendants are disapproved. There may be substituted in place thereof findings of fact and conclusions of law holding that the title was in Louisa Roberts Stamp at the time of her death by adverse possession, and as such passed to these plaintiffs under her will, in accordance with this opinion, the same to be presented to this court at its March, 1923, term.

H. T. KELLOGG, Acting P. J., VAN KIRK and HINMAN, JJ., concur; HASBROUCK, J., dissents, on the opinion of SEARS, J., at Trial Term.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the plaintiffs as prayed for in the complaint.

The court disapproves of such portions of findings first, second, third, fourth and fifth as declare or find title or interest in the parties therein named.

And the court finds that at the time of her death Louisa Roberts Stamp was the owner and entitled to the possession of the premises described in the complaint; that the said Louisa Roberts Stamp was at all times, since November 26, 1857, to the time of her death, in undisturbed, peaceable and exclusive adverse possession of the said premises in dispute, claiming the same under the deed to her from George Fix and wife, dated November 26, 1857; and, as a conclusion of law, that the plaintiffs are entitled to the relief demanded in the complaint, with costs.

---

* Now Civ. Prac. Act, § 37 *et seq.;* Id. § 43.— [REP.